(No. 51229.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARLA ZEGART, Appellee.

*Opinion filed December 1, 1980.—Rehearing denied January 29, 1981.*

UNDERWOOD and RYAN, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and J. Michael Fitzsimmons, State's Attorney, of Wheaton (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and John T. Elsner III, Assistant State's Attorney, of Wheaton, of counsel), for the People.

A. E. Botti, Douglas Drenk and Gregory N. Freerksen, of Wheaton, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The question in this case is whether defendant's conviction for the offense of driving across a highway dividing median bars a subsequent prosecution for reckless homicide when both charges arise out of the same occurrence.

On December 19, 1975, an eastbound automobile, driven by defendant, Marla Zegart, crossed over a dividing median of the East-West Tollway and struck a westbound vehicle driven by Raymond McJohn, Jr. As a result, two passengers in the McJohn vehicle, Margaret McJohn and Kathryn J. Grayheck, were killed. A State trooper at the scene issued a traffic complaint to defendant, charging her with crossing over a highway dividing median in violation of section 11–708(d) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11–708(d)). On January 14, 1976, in the circuit court of Du Page County, defendant submitted a plea of guilty, was convicted,

and was fined. Approximately four months later, defendant was indicted on two counts of reckless homicide (Ill. Rev. Stat. 1975, ch. 38, par. 9—3(a)). Defendant moved to dismiss the indictment based on sections 3—3 and 3—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 3—3, 3—4) and on the fifth amendment to the Federal Constitution. In support of her motion, defendant stated that, at all times relevant to her initial prosecution, the Du Page County State's Attorney knew of the two fatalities which arose out of the occurrence. On March 15, 1977, the Du Page County circuit court granted defendant's motion to dismiss. The appellate court, by order (73 Ill. 2d R. 23), affirmed. (88 Ill. App. 3d 1200.) It concluded that the case was indistinguishable from, and thus controlled by, the recent case of *In re Vitale* (1978), 71 Ill. 2d 229. We granted the State leave to appeal.

In *Vitale*, an automobile driven by the minor respondent struck and killed two small children. The investigating police officer issued a traffic citation charging respondent with failing to reduce speed to avoid an accident (Ill. Rev. Stat. 1973, ch. 95½, par. 11—601). Subsequently, in a bench trial, the respondent was convicted and fined for the traffic violation. Thereafter, the State filed a petition for adjudication of respondent's wardship based on the same occurrence. The petition alleged that respondent was delinquent because he committed the offense of involuntary manslaughter while recklessly driving an automobile (Ill. Rev. Stat. 1973, ch. 38, par. 9—3). We held that the subsequent prosecution for manslaughter was barred by sections 3—3(b) and 3—4(b)(1) (Ill. Rev. Stat. 1973, ch. 38, pars. 3—3(b), 3—4(b)(1)) of our Criminal Code of 1961 (*In re Vitale* (1978), 71 Ill. 2d 229, 234-35), and by the double jeopardy clause of the fifth amendment to the United States Constitution (71 Ill. 2d 229, 235-40). Following the allowance of the State's petition for a writ of *certiorari*, the United States Supreme Court vacated the judgment and remanded the cause to this court for

further proceedings because of its "doubts about the relationship under Illinois law between the crimes of manslaughter and a careless failure to reduce speed to avoid an accident, and because the reckless act or acts the State will rely on to prove manslaughter are still unknown ***." *Illinois v. Vitale* (1980), 447 U.S. 410, 421, 65 L. Ed. 2d 228, 238-39, 100 S. Ct. 2260, 2267-68.

It should be emphasized that *Vitale* was before the Supreme Court on a pretrial order dismissing a petition for adjudication of wardship. At this stage of the proceedings, the court was unable to determine if, in fact, the respondent had a valid double jeopardy claim, since no evidence had been introduced and the State had not disclosed whether, in the pending manslaughter charge, it intended to rely upon respondent's failure to reduce speed to avoid the collision.

After discussing when double jeopardy may or may not occur, depending upon whether the failure to reduce speed is or is not "always" a necessary element of manslaughter by automobile, the court, in referring to *Brown v. Ohio* (1977), 432 U.S. 161, 169, 53 L. Ed. 2d 187, 196, 97 S. Ct. 2221, 2227, stated:

> "In any event, it may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown* and our later decision in *Harris v. Oklahoma* [(1977), 433 U.S. 682, 53 L. Ed. 2d 1054, 97 S. Ct. 2912]."
> *Illinois v. Vitale* (1980), 447 U.S. 410, 420, 65 L. Ed. 2d 228, 238, 100 S. Ct. 2260, 2267.

In *Harris,* defendant's conviction for felony murder arose out of an armed robbery. Subsequently, the State

sought prosecution for the robbery, which was held to be barred under the double jeopardy clause. In relating that holding to the *Vitale* case, the court commented:

"[U]nder *In re Nielsen* [(1889), 131 U.S.176, 33 L. Ed. 118, 9 S. Ct. 672], a person who has been convicted of a crime having several elements included in it may not subsequently be tried for a lesser-included offense—an offense consisting solely of one or more of the elements of the crime for which he has already been convicted. Under *Brown,* the reverse is also true; a conviction on a lesser-included offense bars subsequent trial on the greater offense.

By analogy, if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution." *Illinois v. Vitale* (1980), 447 U.S. 410, 421, 65 L. Ed. 2d 228, 238, 100 S. Ct. 2260, 2267.

In the instant case, unlike *Vitale,* the State has filed an amended bill of particulars informing defendant of the basis for the prosecution. (See *Illinois v. Vitale* (1980), 447 U.S. 410, 426-28, 65 L. Ed. 2d 228, 242-43, 100 S. Ct. 2260, 2270-71 (Stevens, J., dissenting).) The bill states:

"That the People do not, at this time, expect to rely upon the act of driving across the median strip *per se* as a reckless act of the defendant. The People do expect to introduce evidence that the defendant did actually cross the median strip but only in so far as it is necessary to prove the allegations of the indictment, the remainder of the Bill of Particulars and the Additional Bill of Particulars. Specifically, the People expect to introduce evidence that the defendant crossed the median strip in order to show the

causal nexus between the defendant's conduct prior to actually crossing the median strip and the death of the two victims named in the indictment. Also, such evidence will be introduced in support of the allegation that the defendant was driving too fast for conditions, failing to reduce speed to avoid a collision, failure to drive a vehicle in the proper lane of the roadway and improper passing on the left."

In its pleading the State concedes, prior to trial, that it intends to sustain the manslaughter charge by introducing evidence that defendant drove across the median. While it is true that reckless homicide does not "always" entail proof of driving across a median strip, under the particular facts in this case, as disclosed by the amended bill of particulars, the State does expect to rely on such conduct "insofar as it is necessary to prove the allegations of the indictment." In sum, the State intends to use the factual basis which led to the first conviction as the basis for the second conviction. We conclude that by doing so the State would be violating the double jeopardy clause of the fifth amendment to the United States Constitution (see the majority and dissenting opinions in *Illinois v. Vitale*). Having reached this conclusion, we find it unnecessary to address the arguments based on sections 3—3 and 3—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 3—3, 3—4).

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

The court's opinion does not completely reflect the history of *In re Vitale* (1980), 71 Ill. 2d 229, a case which I believe is, in principle, indistinguishable from this one. My colleagues in *Vitale* held a prior conviction for failure to reduce speed precluded a subsequent manslaughter

prosecution. The State sought *certiorari*, which was allowed, and we were subsequently requested by the Supreme Court to certify whether *Vitale* had been decided on State or Federal grounds. On March 23, 1979, we responded as follows:

"IT IS HEREBY certified that the judgment of this Court, as expressed in its opinion in this cause, is based upon federal constitutional grounds."

Despite this, my colleagues now say that *Vitale* was decided on the basis of Illinois statutory provisions as well as Federal double jeopardy provisions. That statement is, however, directly contradicted by our certification quoted above and this court's opinion in *Vitale*. There, the late Mr. Justice Dooley, speaking for my colleagues, removed any doubt as to the basis for the majority opinion by concluding it with the following paragraph:

"For the reasons herein expressed, under the double jeopardy clause the conviction on the traffic charge of failure to reduce speed precluded the prosecution in a separate action for involuntary manslaughter." 71 Ill. 2d 229, 240.

I dissented at some length in *Vitale* because I thought the issue an important one and because I believed then, as I do now, that double jeopardy considerations barred the manslaughter prosecution *only* if manslaughter *always* included the lesser charge of failure to reduce speed. Plainly, it seemed to me, it did not.

In *Illinois v. Vitale* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 237-38, 100 S. Ct. 2260, 2267, the opinion of the Supreme Court states:

"The point is that if manslaughter by automobile does not *always* entail proof of a failure to slow, then the two offenses are not the 'same' under the *Blockburger* test. *The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to*

*establish an element of its manslaughter case would
not be sufficient to bar the latter prosecution.*

IV

If, as a matter of Illinois law, a careless failure
to slow is *always* a necessary element of man-
slaughter by automobile, then the two offenses are
the 'same' under *Blockburger* and Vitale's trial
on the latter charge would constitute double
jeopardy under *Brown v. Ohio.* " (Emphasis added.)

The italicized portions indicate that double jeopardy
considerations apply only if involuntary manslaughter
*always* involves a failure to reduce speed. Since one can be
guilty of involuntary manslaughter without even using a
car, it is apparent that a failure to reduce speed is not
*always* included in the offense of involuntary man-
slaughter; the fact that failure to reduce speed *may* be an
element of that offense in some cases "would not be
sufficient to bar the latter [manslaughter] prosecution."
*Illinois v. Vitale* (1980), 447 U.S. 410, 419-20, 65 L. Ed.
2d 228, 237, 100 S. Ct. 2260, 2267.

My colleagues quote and rely upon later language in
*Vitale* indicating that reliance by the State in the man-
slaughter case upon a failure to slow down would pose a
"substantial" double jeopardy claim. The fact that the
dissenting members of the Supreme Court viewed that
same claim as "not merely *** 'substantial,' " but "dis-
positive" (447 U.S. 410, 426, 65 L. Ed. 2d 228, 241, 100
S. Ct. 2260, 2270 (Stevens, J., dissenting)) lends support
to my belief that the majority thought otherwise.

My colleagues acknowledge the obvious fact that in
this case the subsequent charges of reckless homicide
against defendant Zegart do not *always* involve crossing a
highway dividing median, the lesser charge to which
defendant had earlier pleaded guilty. Consequently, the
fact that the proof in the trial of the homicide cases will
show that defendant crossed the median strip does not, in

448

my opinion, bar the reckless-homicide prosecutions.

The *Blockburger* test providing that a prosecution for the lesser offense does not preclude subsequent prosecution for the greater offense unless the lesser is *always* included within the greater has been a workable, easily understood and easily applied rule. In my opinion we should adhere to it in the absence of an unequivocal pronouncement by a majority of the Supreme Court that it has been superseded. I do not find that announcement in *Vitale*, and I would not voluntarily abandon the *Blockburger* test. Particularly would I not exchange it for the amorphous concept now adopted by this court.

I would reverse the double jeopardy holding of the appellate court.

MR. JUSTICE RYAN joins in this dissent.