THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES H. LUCAS, Defendant-Appellee.

Third District No. 3—85—0218

Opinion filed August 7, 1986.

6

Norman K. Rafferty, State's Attorney, of Hennepin (John X. Breslin and Howard R. Wertz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Nancy Rink Carter, both of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

The State appeals (103 Ill. 2d R. 604) from an order of the circuit court of Putnam County dismissing charges of aggravated assault (84CM19) and battery (84CM24) (Ill. Rev. Stat. 1985, ch. 38, pars. 12—2(a)(1), 12—3) against defendant, Charles H. Lucas, on double jeopardy grounds, and challenges the circuit court's judgment as erroneous. We affirm.

On May 8, 1984, Carolyn A. Lucas, then the defendant's wife, filed a motion in a pending dissolution proceeding (In re Marriage of Lucas, No. 84—D—7), seeking temporary custody, support maintenance, injunctive and temporary relief, and a temporary restraining order. That day the trial court entered an agreed order in that cause, restraining both parties from "striking or otherwise interfering with [the] personal liberty of the other," and awarding Carolyn the temporary and exclusive possession of the marital residence.

On May 17, 1984, defendant apparently telephoned Carolyn and "engaged in a series of verbal threats *** [stating] that he would commit some illegal and/or criminal act which would result in his incarceration *** for approximately 20 years." Also that day defendant "forcefully broke into the marital residence *** and remained [there] throughout [that] evening." As a result of this incident, Carolyn filed a petition for rule to show cause on May 21, 1984, alleging that defend-

ant's "conduct *** constitutes a wilful and intentional failure and refusal to abide by the terms of *** the agreed Court Order entered *** May 8, 1984." On May 22, 1984, the trial court entered a rule to show cause and set the matter for hearing. At the May 29, 1984, hearing on the rule to show cause, the parties stipulated to the facts and to the disposition. Then on June 19, 1984, the court entered an order on the rule to show cause that found defendant to be in contempt of court for the wilful failure and refusal to obey the May 8, 1984, court order. This order stayed sentencing on the contempt, and defendant was ordered to continue regular counseling and treatment with Alcoholics Anonymous and his psychiatrist, and was to comply with all previous court orders.

On June 24, 1984, defendant again entered the marital residence, during which time he allegedly held Carolyn in a "stranglehold," while holding a knife to her throat, and stated that he "was going to get even now; for kicking him out of the house." On June 26, 1984, Carolyn signed a criminal complaint (84CM19), charging defendant with aggravated assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—2(a)(1)). Due to this incident, counsel representing Carolyn in the dissolution proceeding filed a notice on June 27, 1984, requesting the contempt matter be called up for sentencing. The matter was continued to July 10, 1984, at which time the trial court entered an agreed order, sentencing defendant on the contempt to one weekend of incarceration and two additional weeks of work release. The imposition of work release was stayed and was to be "implemented only upon [defendant's] failure *** to comply with the terms and provisions of all orders of [the] court."

On September 1, 1984, defendant allegedly struck Carolyn "8 to 9 times in the back of her head and neck with a beer glass until the glass broke leaving pieces of glass in her neck." Following this incident, Carolyn signed a complaint (84CM24) charging defendant with battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—3). On September 4, 1984, Carolyn filed a petition for rule to show cause based on this incident, alleging that defendant had again wilfully violated the terms of the May 8, 1984, restraining order. The court issued the rule to show cause and set the matter for hearing.

On September 25, 1984, a sentencing hearing was held on the second rule to show cause. Thereafter, the court entered an agreed order finding that defendant had served two weeks work release, as previously ordered on July 10, 1984, concurrently with his confinement on the pending criminal charges. In sentencing on the contempt, the court ordered defendant to continue "in-hospitalization alcohol treatment at the Ottawa Community Hospital," with his psychiatrist. Defendant was

further ordered to:

> "[C]ontinue work release concurrent with the work release ordered as a condition of his criminal bond. Work release shall terminate when he is committed to the Ottawa Community Hospital by [his psychiatrist]."

On October 9, 1984, the pending aggravated-assault and battery prosecutions (84CM19, 84CM24) were continued subject to being called in by notice. No action had been taken on these cases prior to this time, other than defendant entering pleas of not guilty to both criminal charges.

Thereafter, on November 20, 1984, an agreed order modifying defendant's visitation was entered in the dissolution proceedings, in which the following findings were made:

> "1. That as a result of incidents occurring on June [24], 1984, and September 1, 1984, during which respondent assaulted the petitioner, respondent has served a period of work release for his indirect criminal contempt of court for his failure to obey the order of court of May 8, 1984, restraining him from striking the petitioner.
>
> 2. That, respondent was further ordered as part of said sentencing to be treated by Dr. Chuprevich which treatment has included in-hospitalization alcohol treatment at the Ottawa Community Hospital ***."

Then on March 5, 1985, defendant filed a motion for discharge contending that the criminal prosecutions were barred, pursuant to the prohibitions against double jeopardy, because he had been previously punished for the criminal offenses when he was sentenced for indirect criminal contempt of court in the dissolution proceedings. The trial court ruled that defendant had been previously punished for indirect criminal contempt for incidents out of which the criminal charges arose, and that the evidence presented on the contempt charges would sustain the criminal charges. The court then dismissed the criminal charges and discharged the defendant on the grounds of double jeopardy, relying on *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887. The State now appeals from this judgment pursuant to Supreme Court Rule 604 (103 Ill. 2d R. 604), contending that the trial court's ruling was erroneous for several reasons.

The State first contends that the trial court's reliance on *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887, was erroneous, arguing that the *Gray* decision (1) is distinguishable from the case at bar, (2) was

wrongly decided, and (3) has been implicitly overruled.

In *Gray,* the defendant struck his wife with a gun and then shot her. As a result, he was tried, found in contempt, and punished for a violation of a protective order in a divorce proceeding enjoining defendant from striking or molesting his wife. Subsequently, the defendant was indicted for aggravated battery and the attempted murder of his wife based upon the same conduct. His motion to dismiss on double jeopardy grounds was denied. Defendant was thereafter convicted of aggravated battery and sentenced to one to three years' imprisonment. The majority of the *Gray* court held that the finding of criminal contempt and the conviction of aggravated battery constituted double trial and double punishment for the same offense, in violation of the guarantees against double jeopardy.

Upon comparing *Gray* to the case at bar, we see that here the defendant on one occasion held his wife in a stranglehold with a knife to her throat and threatened her. On a subsequent occasion, the defendant struck his wife repeatedly about the head and neck with a beer glass. Consequently, the defendant was found in contempt of court and punished for violating the protective order in a dissolution proceeding restraining him from striking or otherwise interfering with the personal liberty of his wife. Based upon this same conduct defendant was also charged with the criminal offenses of aggravated assault and battery. Prior to trial and pursuant to the dictates of *Gray,* the court below dismissed the criminal prosecutions as being violative of the guarantees against double jeopardy. Thus, a comparison reveals that *Gray* and the instant case are substantially indistinguishable.

The State contends, however, that the *Gray* situation differs from ours because the defendant in *Gray* was held in indirect criminal contempt. The State refers to a remark by the trial court, to argue that the defendant here was held in indirect civil contempt. This argument is unpersuasive. It is apparent from an examination of the record before us that the instant contempt proceedings were criminal in nature. Indeed, the trial court's November 20, 1984, order, entered in the dissolution proceeding, expressly found:

> "That as a result of incidents occurring on June [24], 1984, and September 1, 1984, *** respondent has served a period of work release for his indirect criminal contempt of court ***."

Moreover, a review of the decisions in this area supports our conclusion. Proceedings in the nature of civil contempt ordinarily are prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties. (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App.

3d 229, 233, 371 N.E.2d 294, 297-98.) Proceedings in the nature of criminal contempt are directed to the preservation of the dignity and authority of the court, or a judge acting judicially. (56 Ill. App. 3d 229, 233, 371 N.E.2d 294, 297-98.) A sanction for civil contempt is coercive in nature and is instituted to compel obedience to a court order. The contemnor can avoid the sanction by compliance with the order. The sanction involved, such as incarceration, will continue in effect until there is compliance or termination of the sanction by the terms of the order itself. (*In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 891-92, 364 N.E.2d 430, 435.) A sanction for criminal contempt is punitive in nature and is instituted to punish, as opposed to coerce, a contemnor for contumacious conduct. (49 Ill. App. 3d 885, 891, 364 N.E.2d 430, 435.) In sum, civil contempt occurs when the contemnor fails to do that which the court has ordered, whereas criminal contempt consists of doing that which has been prohibited. *Shillitani v. United States* (1966), 384 U.S. 364, 368, 16 L. Ed. 2d 622, 626, 86 S. Ct. 1531, 1534; *In re Estate of Maslowe* (1985), 133 Ill. App. 3d 1043, 1046, 479 N.E.2d 1180, 1183.

 The State maintains that the instant contempt proceedings were civil in nature because the sanctions were coercive, rather than punitive, and were instituted to compel compliance with the May 8, 1984, restraining order. We disagree. One of the chief characteristics of civil contempt is that the contemnor must "hold the key to the cell," *i.e.*, he must have it within his power to purge himself by complying with the court's order. (*People v. Mowery* (1983), 116 Ill. App. 3d 695, 702, 452 N.E.2d 363, 368.) Accordingly, a sentencing order in a civil contempt proceeding must contain an effective purging provision. (*In re Marriage of Longston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167; *In re Marriage of Harvey* (1985), 136 Ill. App. 3d 116, 483 N.E.2d 397.) Here, the contempt sanctions were not coercive as the defendant did not have it within his power to purge himself by complying with the court order. Rather, the contempt sanctions were punitive and, thus, criminal in nature and represented the trial court's determination that the defendant was being punished for conduct prohibited by the terms of the restraining order. See *Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 357 N.E.2d 477.

 The State next contends that the criminal prosecutions in this appeal cannot be considered "successive" prosecutions under *Gray* because the criminal charges were filed *prior* to commencement of the contempt proceedings. It is true that unlike *Gray* the criminal complaints here were filed before the commencement of the contempt proceedings. However, at the time of sentencing on the contempt charges,

the criminal prosecutions had not yet proceeded to trial and, in fact, no action had been taken on those cases. Under the circumstances, the timing of the filing of the criminal complaints is of little consequence. The further prosecution of the criminal charges including trial, possible conviction, and sentencing would have followed the sentencing on the contempt and could, therefore, be considered successive prosecutions under *Gray*.

■ The State next advances several reasons why it believes *Gray* was wrongly decided, relying on Justice Ryan's dissent in *Gray*. On that basis, the State urges this court to depart from the holding in *Gray*. However, Illinois Supreme Court decisions are binding on all Illinois courts. (*Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 116 N.E.2d 863; *People v. Spahr* (1978), 56 Ill. App. 3d 434, 371 N.E.2d 1261.) Thus, this court is bound by precedents of our supreme court as embodied in the *Gray* majority opinion.

■ In addition, the State contends that the vitality of *Gray* must be reconsidered in light of subsequent changes in the law. Specifically, the State asserts that *Gray* was implicitly overruled by the United States Supreme Court decision in *Illinois v. Vitale* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260.

In *Gray,* the court stated that the crucial issue was whether the offenses of criminal contempt and aggravated battery constituted the same offense for purposes of double jeopardy. To make this determination the court defined the appropriate test as: "Would the same evidence sustain the proof of each offense?" (*People v. Gray* (1977), 69 Ill. 2d 44, 49, 370 N.E.2d 797, 799.) The *Gray* court relied on the United States Supreme Court's reasoning in *Brown v. Ohio* (1977), 432 U.S. 161, 166, 53 L. Ed. 2d 187, 194, 97 S. Ct. 2221, 2225, which in turn reiterated the test as stated in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182:

" 'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not ....' "

The *Brown* court analyzed the *Blockburger* test, stating:

"This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes ....' *Iannelli v. United States,* 420 U.S. 770, 785 n.17, [43 L. Ed. 2d 616, 95 S. Ct. 1284] (1975)." (432 U.S. 161, 166, 53 L. Ed. 2d 187, 194, 97 S. Ct.

2221, 2226.)

Following this reasoning, the *Gray* court concluded that by applying a nontechnical evaluation of the "same evidence" test and by focusing upon the similarity of the elements involved in the two proceedings, it was manifest to it that the defendant was prosecuted and punished twice for the same offense based on the same conduct, namely striking and shooting his wife. *People v. Gray* (1977), 69 Ill. 2d 44, 51-52, 370 N.E.2d 797, 800.

We disagree with the State's argument that *Gray* has been implicitly overruled by the United States Supreme Court's decision in *Vitale.* Recently, this argument was addressed in *People v. Gartner* (1986), 143 Ill. App. 3d 113, 491 N.E.2d 927. The *Gartner* court fully analyzed the *Vitale* decision, as well as Illinois courts' subsequent application of *Vitale* and determined that *Gray* was not implicitly overruled. In interpreting *Gray* as being consonant with *Vitale,* the *Gartner* court stated:

> "Since in *Gray* both offenses required proof of the same conduct to satisfy a necessary element, based upon the *dicta* in *Vitale,* upon which Illinois courts have since relied, we are persuaded that the *Gray* holding is not vitiated by the claim that the two offenses were not the same for purposes of the *Blockburger* test." 143 Ill. App. 3d 113, 120, 491 N.E.2d 927, 932.

In reply, the State argues that *Gartner* is not controlling on this issue, as that decision is invalidated by the Illinois Supreme Court decision in *People v. Mueller* (1985), 109 Ill. 2d 378, 488 N.E.2d 523. We first point out that the circumstances in *Mueller* differ from those in both *Gartner* and the instant case. The defendant in *Mueller* shot and killed two men and then concealed their bodies. Defendant was first tried for murder and was acquitted. He was then tried for homicidal concealment and was convicted. On appeal, the defendant argued that the use of overlapping evidence in the two trials barred the second prosecution for homicidal concealment. The *Mueller* court disagreed, reasoning "[s]ince the offenses require different acts as well as different states of mind, each requires proof of a fact the other does not, and therefore murder and homicidal concealment are clearly not the same offense under the *Blockburger* test." 109 Ill. 2d 378, 388, 488 N.E.2d 523, 528.

Notwithstanding the *Mueller* court's analysis of the *Blockburger* test, it recognized that, "in limited circumstances, the *Blockburger* test has been expanded so that courts may look beyond the face of the statutes involved to the elements actually necessary to establish the charges to determine whether double jeopardy principles have been violated." (*People v. Mueller* (1985), 109 Ill. 2d 378, 388-89, 488 N.E.2d

523, 528.) Thereafter, the court specifically discussed *Vitale,* noting that the decision reaffirmed *Blockburger* and recognized that " 'the *Blockburger* test focuses on the proof necessary to prove the *statutory elements* of each offense, rather than on the actual evidence to be presented at trial.' " (109 Ill. 2d 378, 390, 488 N.E.2d 523, 528.) A complete reading of *Mueller* together with *Vitale,* reveals that the *Gartner* analysis is valid.

 ■ Finally, the State asserts that the dual-sovereignty doctrine applies to the successive prosecutions here. Relying on *Heath v. Alabama* (1985), 474 U.S. 82, 88 L. Ed. 2d 387, 106 S. Ct. 433, the State contends that the divorce court and the State's Attorney or criminal court are separate sovereigns, and, thus, successive prosecutions of defendant for the same conduct should not be barred by double jeopardy principles. Contrary to the State's contentions, the *Heath* decision is distinguishable from the instant case.

The *Heath* court addressed the issue of the applicability of the dual-sovereignty doctrine to successive prosecutions by two States. The court reasoned that the States are separate sovereigns, each deriving the power to prosecute from its own inherent sovereignty. Hence, the court concluded that successive prosecutions by two States for the same conduct are not barred by the double jeopardy clause. The court noted, however, that "had these offenses arisen under the laws of one State and had petitioner been separately prosecuted for both offenses in that State, the second conviction would have been barred by the Double Jeopardy Clause." *Heath v. Alabama* (1985), 474 U.S. 82, ____, 88 L. Ed. 2d 387, 393, 106 S. Ct. 433, 437.

Here, the State suggests that the divorce court and the State's Attorney or criminal court are to be considered separate sovereigns. Contrary to the State's assertions, there are no separate "divorce courts" or "criminal courts." Rather, the constitution of this State provides for one court for each respective county—the circuit court. Accordingly, the circuit court derives its powers from one sovereign—the people of the State of Illinois. (See generally, *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797.) Therefore, the dual-sovereignty doctrine does not allow for successive prosecutions here.

Based on our foregoing analysis, we conclude that the trial court correctly dismissed the criminal prosecutions on double jeopardy grounds. Accordingly, the judgment of the circuit court of Putnam County is affirmed.

Affirmed.

GREEN and MORTHLAND, JJ., concur.