THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WAYNE MUDD, Defendant-Appellant.

Fourth District No. 4—86—0358

Opinion filed April 23, 1987.

LUND, J., dissenting.

Asher O. Geisler, of Geisler, Waks & Geisler Law Offices, of Decatur, for appellant.

J. William Roberts, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, on October 4, 1985, was charged by complaint with the offense of reckless homicide based upon a May 8, 1982, automobile collision and subsequent death on July 28, 1985, of the victim in that collision. Defendant had previously pleaded guilty to five charges arising out of the May 1982 incident, including reckless driving and fleeing or attempting to elude police officers. A jury, in April of 1986, found the defendant guilty of reckless homicide, and the court imposed a sentence of six years' imprisonment. Defendant appeals that conviction as improper, raising the statute of limitations, double jeopardy, and the due process clause.

The pertinent facts are generally undisputed. On May 8, 1982, defendant drove his car at a high rate of speed, fleeing from city of Springfield and Sangamon County law-enforcement officers. The high-speed chase began after Springfield police responded to a report that a man was tampering with automobiles in the lot of a retail car dealership. Defendant ran a red light at the intersection of Laurel and Spring Streets in Springfield, striking a car driven by the victim, Patricia Weller. As a result of the collision, the victim suffered severe head injuries which rendered her decerebrate, or "lacking in cerebral functioning." She never regained consciousness and died three years later in July of 1985.

Defendant, on October 7, 1982, entered guilty pleas to five of six

counts originally filed against him after the incident. He received concurrent sentences of up to five years on those counts, including six months each for reckless driving and fleeing or attempting to elude police officers, five years for theft over $500, three years for possession of burglary tools, and 364 days for tampering with a vehicle.

The accident victim died on July 28, 1985, more than three years and two months after the collision. An additional complaint was filed on October 4, 1985, charging the defendant with reckless homicide. The cause of the victim's death was listed as severe pneumonia, a condition directly linked to respiratory problems incurred while she remained in a coma.

On November 4, 1985, the defendant filed a motion to dismiss the complaint. In that motion, defendant argued any possible prosecution for reckless homicide was barred by the applicable statute of limitations contained in section 3—5(b) of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1985, ch. 38, par. 3—5(b)). Defendant postulated that because prosecution for a felony under section 3—5(b) must be commenced within three years of the commission of the offense, and the reckless homicide complaint here was not filed until more than three years had elapsed since the accident, then the statute operated as a bar. The trial court denied that motion.

The cause proceeded to trial on April 8 and 9, 1986. A jury found defendant guilty of reckless homicide. Defendant was sentenced to a six-year term of imprisonment on May 20, 1986. A notice of appeal was filed the following day.

Defendant's initial argument focuses on the three-year statute of limitations applicable to felony offenses, which he advances had already run when he was charged with reckless homicide. We note the general limitations statute contained in the Criminal Code reads in relevant portion:

"Sec. 3—5. General Limitations. (a) A prosecution for murder, manslaughter, treason, arson, or forgery may be commenced at any time.

(b) Unless the statute describing the offense provides otherwise *** a prosecution for any offense not designated in Subsection (a) must be commenced *within 3 years after the commission of the offense* if it is a felony ***." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 3—5.

Defendant perceives the primary inquiry under the statute of limitations to be, What constitutes the actual "commission" of the offense of reckless homicide? With an eye to cases involving conspiracy prosecutions, defendant avers that an offense is committed for purposes of

the statute only upon the happening of the "last overt act" performed on his part. (*People v. Link* (1936), 365 Ill. 266, 6 N.E.2d 201; *People v. Walsh* (1926), 322 Ill. 195, 153 N.E. 357.) He also analogizes to matters involving embezzlement or fraudulent conversion, noting a holding in which a court determined the statute of limitations only begins to run in those matters at the time the offense is committed, rather than when the offense itself is made manifest. (*People v. Lee* (1934), 356 Ill. 294, 190 N.E. 264.) Similarly, he maintains in this matter that the statute began to run as of the date he committed the last "overt act" on May 8, 1982, and not the date when "the result of his acts [were] manifested." He concludes that because the complaint charging him with reckless homicide was not filed until over three years after the accident, the statute bars his prosecution.

The State counters that defendant could not have been charged with reckless homicide until the death of the victim. The State argues the death of the victim on July 28, 1985, is the event which triggered the applicable statute of limitations for reckless homicide, not the date of the chase and accident. The State contends the filing of the complaint on October 4, 1985, was timely.

The issue here is whether the three-year statute of limitations for reckless homicide bars a prosecution for that offense when the death of an accident victim takes place more than three years after the incident, and when the complaint charging the defendant with the offense is filed within months of the victim's death but more than three years after the initial injury.

Defendant calls our attention to the common law principle, commonly referred to as the "year and a day rule," under which a victim had to expire within one year and one day of the injury for a charge of murder to lie. Illinois formerly had a statutory version of this rule prior to passage of a comprehensive criminal code. Relying on the language of the limitations statute in section 3—5, defendant notes that upon enactment of our Criminal Code of 1961, certain offenses such as murder, manslaughter, and arson are no longer subject to any limitation. (Ill. Rev. Stat. 1985, ch. 38, par. 3—5(a).) On the other hand, prosecutions for other felony offenses must be initiated within three years of the "commission" of the offense. (Ill. Rev. Stat. 1985, ch. 38, par. 3—5(b).) From this defendant reads into the statute an intent that a prosecution for murder may be commenced at any time, but a prosecution for reckless homicide can only be maintained within three years after infliction of the injury or fatal blow regardless of whether or not the victim expires within that time. In effect, defendant advances a statutory "three year and a day" rule for reckless homicide

in Illinois.

Defendant either misapprehends or confuses the old "year and a day" rule as it relates to the statute of limitations. Under the common law, an outer limit was placed on the period that could elapse between an injury and death, the conclusive presumption being that the injury did not cause the death if the interval exceeded one year and one day. (Annot., 60 A.L.R.3d 1323, 1325, sec. 2 (1974).) The common rule was that, in order to constitute punishable homicide, death must ensue within a year and a day from infliction of a mortal wound. *Ball v. United States* (1891), 140 U.S. 118, 35 L. Ed. 377, 11 S. Ct. 761.

The "year and a day" rule gradually began to disappear as courts and legislatures alike recognized advances in medical and related sciences had resulted in the sustaining or prolonging of life in the face of trauma or disease. Considered antiquated in the face of present-day medical realities, the "year and a day" rule was either abrogated or modified by statute or by judicial fiat in many States. (Annot., 60 A.L.R.3d 1323 (1974).) Illinois subscribed to a "year and a day" rule prior to enactment of the Criminal Code of 1961 (Ill. Rev. Stat. 1961, ch. 38, par. 365; see *People v. Corder* (1922), 306 Ill. 264, 137 N.E. 845), but the statute was repealed as of January 1, 1962 (Ill. Rev. Stat. 1961, ch. 38, par. 35—1), and no such rule exists in Illinois today.

In any event, the "year and a day" rule did not operate in the nature of a statute of limitations barring prosecution. So long as the death occurred within the specified time frame, it was then presumed the blow or injury caused the death for purposes of a homicide prosecution. If the death did not occur within the specified time frame, it was presumed the injury did not cause the death. Under the latter scenario, a defendant in no event could be prosecuted for murder or manslaughter because the final element, a death caused by the defendant, was presumptively nonexistent.

Under the statute of limitations, on the other hand, the elements of the crime itself are manifest; the statute instead arises where the State prosecutes someone for a crime after a certain amount of time has elapsed. The statute represents a policy decision limiting the power of a sovereign to make an offender answer for a crime, even though he committed it, unless he is prosecuted with due diligence. The statute operates to encourage prompt investigation of a crime, to prevent stale prosecution, and to serve as a means by which a crime does not hang over an offender's head for an undue amount of time.

We agree with the defendant that some outer time limit should be placed on the lapse of time between injury and death for purposes of prosecution, but this is not the object of the statute of limitations.

Rather, it is precisely the situation the old "year and a day" rule was designed to resolve. No such rule in any form exists in this State today. We invite the General Assembly to address this problem.

The offense of reckless homicide as defined in the Criminal Code of 1961 further supports our conclusions. Section 9—3(a) states the following:

> "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases in which the cause of the death consists of the driving of a motor vehicle, in which case the person commits reckless homicide." Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).

The elements constituting the offense of reckless homicide may be summarized as an unintentional killing of a person by the defendant while operating a motor vehicle recklessly in a manner likely to cause death or great bodily harm. (*People v. Miller* (1979), 75 Ill. App. 3d 775, 777, 394 N.E.2d 783, 785; Illinois Pattern Jury Instruction, Criminal, No. 7.10 (2d ed. 1981).) Without the existence of any one of these elements, the crime itself has not been committed. There can be no homicide without a death. Unless a death occurs, the State cannot investigate, charge, or prosecute for reckless homicide.

Again, section 3—5 provides the limitation period for felonies begins to run at the "commission of the offense." (Ill. Rev. Stat. 1983, ch. 38, par. 3—5(b).) Defendant theorizes the time of the "commission" of reckless homicide would necessarily be determined by relating back to the last physical, "overt" act performed by him. As earlier noted, the State answers this theory by asserting defendant could not have been charged with the offense of reckless homicide until the death of the victim.

■ Criminal limitations statutes are to be liberally construed or interpreted in favor of defendants, because such statutes are enacted in recognition of the fact the passage of time may obscure the basic proof both of guilt and of innocence. (*Toussie v. United States* (1970), 397 U.S. 112, 25 L. Ed. 2d 156, 90 S. Ct. 858.) However, not even a liberal interpretation will support the defendant's theory.

■ A criminal offense is defined as that "which subjects the offender to imprisonment, and/or fine." (Black's Law Dictionary 975 (5th ed. 1979).) An offense is further defined in our Criminal Code as "a violation of any penal statute of this State." (Ill. Rev. Stat. 1985, ch. 38, par. 2—12.) There could be no violation of the reckless homi-

cide statute until all elements of the offense were present, including the death of the victim. Without the death, the crime of reckless homicide did not exist, and a charge of reckless homicide could not lie. Statutes of limitations normally begin to run only "when the crime is complete" (*Pendergast v. United States* (1943), 317 U.S. 412, 418, 87 L. Ed. 368, 372, 63 S. Ct. 268, 271), and the crime here was complete only upon the existence of the last element, the death of the victim.

Of some instruction is the reasoning of the California Supreme Court in *People v. Rehman* (1964), 62 Cal. 2d 135, 41 Cal. Rptr. 457, 396 P.2d 913, *cert. denied* (1964), 379 U.S. 930, 13 L. Ed. 2d 342, 85 S. Ct. 326. The victim in *Rehman* died on June 29, 1959, allegedly as a result of an operation performed on June 9, 1959. An indictment for manslaughter was filed against the defendant on June 14, 1962. California had a three-year statute of limitations for manslaughter. Thus, the indictment in *Rehman* was filed less than three years after the death of the victim, although more than three years after the operation purportedly causing death. Furthermore, California at the time was operating under a codified "year and a day" rule, under which a death must occur within one year and one day of the injury in order to be prosecuted as a punishable homicide.

■ The *Rehman* court held the statute of limitations begins to run in a manslaughter case on the date the victim dies after a fatal blow is inflicted. The court stated:

> "It is obvious that the offense of manslaughter had not been committed until the victim died. Until death occurred, there was no manslaughter; and before the moment of death, defendant could not have been investigated and prosecuted for manslaughter. [Citations.] If a crime is defined as an act irrespective of the consequences, the crime is the act; but if a crime is defined to include some consequence of the act, the crime is the consequence when produced by a human agency. [Citation.]
>
> In this state, the law makes the crime of manslaughter a composite one. The striking of the victim does not alone make the crime, nor does the death of the victim without a striking (or some other conduct or force) make the crime; it is a combination of the two." 62 Cal. 2d 135, 139, 41 Cal. Rptr. 457, 459, 396 P.2d 913, 915; see also *People v. Breland* (1966), 243 Cal. App. 2d 644, 650, 52 Cal. Rptr. 696, 700.

The court in *Rehman* concluded that because the indictment was returned within three years of the death, which constituted the final element of manslaughter, the criminal action for manslaughter was

properly brought against the defendant. We accept this reasoning as sound.

Defendant nevertheless surmises that, should the trial court's ruling be upheld, it is conceivable he could have been prosecuted for this offense even had 20 years elapsed since the accident. He complains this is a particularly harsh and absurd result, and some sort of cutoff should be imposed on the period during which he could still be made to answer for his overt actions.

Defendant's concerns are genuine. Yet the conclusion we reach is inescapable given the state of the law in Illinois today. The limitations statute contains no reference to an "overt act" as triggering the limitations period. Nor can reference to continuing offenses in the nature of conspiracy or fraud aid defendant's suggestion that some "overt act" necessarily triggers the statute of limitations in reckless homicide cases.

We therefore hold the three-year statute of limitations for reckless homicide was triggered and began to run by the happening of the final element which comprised the offense, the death of the victim. Accordingly, the complaint was timely filed two months and six days later.

In reaching our holding, we have acted under the assumption that the applicable statute of limitations for the offense of reckless homicide is three years. An argument also exists, however, that prosecution for reckless homicide is subject to no limitation.

Under section 3—5(a), a prosecution for certain offenses, such as murder and manslaughter, may be commenced at any time. (Ill. Rev. Stat. 1985, ch. 38, par. 3—5(a).) Reckless homicide comes within the definition of involuntary manslaughter, as both involve the same elements and mental state. The essential distinction between the two is that reckless homicide is limited to cases involving the specific act of driving a motor vehicle. (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).) Furthermore, reckless homicide was enacted as a separate offense in recognition that a jury may be hesitant to convict someone of manslaughter, given the stigma which attaches to the word and the greater penalty involved. (Ill. Ann. Stat., ch. 38, par. 9—3, Committee Comments, at 477-78 (Smith-Hurd 1979).) Thus reckless homicide, with its lesser penalty imposed by legislative choice, seems properly described as a lesser included offense of involuntary manslaughter.

Following this line of reasoning, it is not inconceivable that reckless homicide itself falls within the penumbra of "manslaughter" as that term is used in section 3—5. Therefore, prosecution for reckless homicide could be commenced at any time. Given our holding here,

though, we do not reach this conclusion, nor do we necessarily urge this interpretation of the statute. The General Assembly may wish to resolve this question.

■■ ■ Defendant's next contention of error concerns his prior guilty pleas, convictions, and sentences in 1982 for reckless driving and fleeing or attempting to elude police officers. He argues prior convictions for what he considers lesser included offenses bar any subsequent prosecution for the greater offense of reckless homicide under the double jeopardy clause. The State responds it was unable to proceed on a charge of reckless homicide because the additional fact constituting that offense, the victim's death, was not known and did not occur at the time he was charged with reckless driving.

Some of the acts for which defendant was charged in the reckless-homicide complaint include operating his vehicle at a high rate of speed, disobeying numerous traffic control signals, and fleeing from law-enforcement officers who were attempting to apprehend him before the collision. These same facts were included in the charges of reckless driving (Ill. Rev. Stat. 1981, ch. 95½, par. 11—503(a)) and fleeing or attempting to elude a police officer (Ill. Rev. Stat. 1981, ch. 95½, par. 11—204(a)) to which the defendant previously pleaded guilty in 1982.

Our analysis of the defendant's argument begins with the double jeopardy clause of the fifth amendment, which provides no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." (U.S. Const., amend. V.) This constitutional guarantee is applicable to the States through the due process clause of the fourteenth amendment. *Benton v. Maryland* (1969), 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056.

It has long been understood that separate statutory crimes need not be identical—either in elements or in actual proof—to be the same within the meaning of the constitutional prohibition of double jeopardy. (*Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221.) No matter what the sequence, the fifth amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense. (*Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221.) If proof of a more serious offense always entails proof of a less serious offense, the more serious is the same, for purposes of double jeopardy, as the lesser. (*People v. Jackson* (1986), 144 Ill. App. 3d 131, 494 N.E.2d 571.) Further, the fifth amendment double jeopardy guarantee serves as a restraint on courts and prosecutors as well as a form of protection against harassment.

Double jeopardy may apply in three separate situations: (1) where

there is a second prosecution for the same offense after acquittal; (2) where there is a second prosecution for the same offense after conviction; and (3) where there are multiple punishments for the same offense. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.) Should successive prosecutions be at stake, the guarantee serves "a constitutional policy of finality for the defendant's benefit." *United States v. Jorn* (1971), 400 U.S. 470, 479, 27 L. Ed. 2d 543, 553, 91 S. Ct. 547, 554.

The traditional test for double jeopardy purposes was succinctly stated by the United States Supreme Court in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

Thus, the double jeopardy inquiry generally focuses on the elements of the offenses charged. (*Illinois v. Vitale* (1980), 447 U.S. 410, 416, 65 L. Ed. 2d 228, 235, 100 S. Ct. 2260, 2264-65.) "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States* (1975), 420 U.S. 770, 785 n.17, 43 L. Ed. 2d 616, 627 n.17, 95 S. Ct. 1284, 1294 n.17.

However, the *Blockburger* test is not the only standard by which courts may determine whether successive prosecutions impermissibly involve the same offense. A line of cases has held that, in limited circumstances, "the *Blockburger* test has been expanded so that courts may look beyond the face of the statutes involved to the elements actually necessary to establish the charges to determine whether double jeopardy principles have been violated." (*People v. Mueller* (1985), 109 Ill. 2d 378, 388-89, 488 N.E.2d 523, 528; see also *Illinois v. Vitale* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260; *Harris v. Oklahoma* (1977), 433 U.S. 682, 53 L. Ed. 2d 1054, 97 S. Ct. 2912; *Brown v. Ohio* (1977), 432 U.S. 161, 167 n.6, 53 L. Ed. 2d 187, 195 n.6, 97 S. Ct. 2221, 2226 n.6.) In effect, successive prosecutions involving greater and lesser included offenses have been held to implicate double jeopardy where the second prosecution requires relitigation of factual issues already resolved by the first. (*Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221; see *People v. Zegart* (1980), 83 Ill. 2d 440, 445, 415 N.E.2d 341, 343-44.) Still, the test focuses on the statutory elements of each offense rather than the

actual evidence presented at trial. *People v. Mueller* (1985), 109 Ill. 2d 378, 488 N.E.2d 523; *People v. Lucas* (1986), 146 Ill. App. 3d 5, 14, 496 N.E.2d 525, 531.

While mindful of these tests under double jeopardy analysis, we believe that resolution of the defendant's claim rests upon other grounds. As we previously noted, the Supreme Court in *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, concluded the fifth amendment prohibits successive prosecution and cumulative punishment for a greater or lesser included offense no matter what the sequence. The court then went on to state in a footnote:

> "An exception may exist where the State is unable to proceed on the more serious charge at the outset because *the additional facts necessary to sustain that charge have not occurred* or have not been discovered despite the exercise of due diligence." (Emphasis added.) (432 U.S. 161, 169 n.7, 53 L. Ed. 2d 187, 196 n.7, 97 S. Ct. 2221, 2227 n.7.)

See also *Jeffers v. United States* (1977), 432 U.S. 137, 151-52, 53 L. Ed. 2d 168, 181, 97 S. Ct. 2207, 2216-17; *United States v. Walker* (D. Hawaii 1982), 546 F. Supp. 805, 806.

This "exception" contained in the *Brown* footnote, followed by the courts in *Jeffers* and *Walker*, is the well-reasoned approach to the problem before us. The defendant could not have been charged with reckless homicide until the death of the victim over three years later. The additional fact constituting that charge—the death of the victim—did not occur until 1985. Even though the victim remained comatose after the collision, there was no way of knowing at the time the original charges were filed exactly what would happen later.

We therefore hold double jeopardy does not attach under these circumstances. This conclusion distinguishes cases such as *Illinois v. Vitale* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260, and *People v. Zegart* (1980), 83 Ill. 2d 440, 415 N.E.2d 341, *cert. denied* (1981), 452 U.S. 948, 69 L. Ed. 2d 961, 101 S. Ct. 3094. In those cases, the fact of the victim's death, necessary to sustain the more serious charge, was *known* at the time the defendants were prosecuted on the lesser charges.

■ However, we do consider that the defendant's six-year sentence for reckless homicide should be reduced by the amount of time already served pursuant to the reckless driving conviction, and we so direct.

We next pause to comment that defendant's arguments concerning double jeopardy and the statute of limitations pertain to the fact he was originally convicted and served time for charges arising out of

the same sequence of events for which he was later "retried." Perhaps it would have been provident on the defendant's part during plea-bargaining negotiations in 1982 to suggest some sort of contingency should the charge of reckless homicide ultimately arise. The record contains no discussion of that eventuality.

 Finally, defendant believes his incarceration results in a deprivation of his liberty without due process of law in violation of the fourteenth amendment (U.S. Const., amend. XIV). In addition to his statute of limitations and double jeopardy arguments, defendant generally assails what he characterizes as "vindictive" conduct by the assistant State's Attorney who handled both the original plea-bargaining proceedings and the subsequent prosecution for reckless homicide. He also contends, at least peripherally, that the trial court erred in admitting evidence of the defendant's previous guilty pleas and convictions on the other charges arising out of the collision.

Under the established framework for analyzing any claim of a due process violation, it must be initially determined whether the complaining party has been deprived of "interests encompassed by the Fourteenth Amendment's protection of liberty and property." (*Board of Regents v. Roth* (1972), 408 U.S. 564, 569, 33 L. Ed. 2d 548, 556, 92 S. Ct. 2701, 2705.) Where such a deprivation has occurred, the remaining question is the extent of the process that is due. *Morrissey v. Brewer* (1972), 408 U.S. 471, 484, 33 L. Ed. 2d 484, 496, 92 S. Ct. 2593, 2602.

 In considering this matter, we believe the defendant has failed to make out any claim of a due process violation. In any event, defendant's contentions regarding vindictiveness by the State's Attorney's office were not specifically raised before the trial court, and could be considered waived on appeal.

We conclude the defendant's statute of limitations, double jeopardy, and due process claims must fail, and his conviction for reckless homicide must be affirmed. We direct defendant be credited for time already served on the prior six-month conviction for reckless driving.

Affirmed and remanded with directions.

SPITZ, P.J., concurs.

JUSTICE LUND, dissenting:

I respectfully dissent from the majority decision as to the application of the statute of limitations. The charge of reckless homicide was instituted more than three years after the accident which eventually

caused the death of Patricia Weller but within a few weeks of the death of Patricia. The defense presented the limitation at trial, contending that the statute barred the prosecution. Whether the statute runs from the time of the accident or the time of the death caused by the accident in reckless driving charges is evidently a case of first impression in Illinois.

Under common law, an action for death could not be brought for an act of malfeasance if the victim lived more than a year and a day after the wrongful act. This limitation was removed by the Criminal Code of 1961. Legislative bodies have the power to adopt statutes of limitations and have done so as acts of grace and repose. (14A Ill. L. & Prac. *Criminal Law* sec. 141 (1968); *People v. Ross* (1927), 325 Ill. 417, 420-21, 156 N.E. 303, 304.) They are based on public policy and subject to the will of the legislative body (*People v. Isaacs* (1967), 37 Ill. 2d 205, 226 N.E.2d 38) and are to be given liberal construction in favor of the accused (*People v. Ross* (1927), 325 Ill. 417, 421, 156 N.E. 303, 304; *People v. Steinmann* (1978), 57 Ill. App. 3d 887, 373 N.E.2d 757).

If the limitation period has expired and no statutory exception applies, the prosecution is barred. (Ill. Rev. Stat. 1981, ch. 38, par. 3—5(b).) No extensions for good intentions are available. Obviously, there are times when the strict application of the limitation appears to further injustice. *People v. Edwards* (1982), 105 Ill. App. 3d 822, 434 N.E.2d 1179.

The legislature has determined that there be no limitation as to certain felony offenses and that other felonies must be brought within three years. The limitation period runs from the commission of the offense. (Ill. Rev. Stat. 1985, ch. 38, par. 3—5(a).) The limitation period has been held to run from the last overt act in furtherance of the offense. (*People v. Isaacs* (1967), 37 Ill. 2d 205, 226 N.E.2d 38.) "Overt act" is defined as "An open, manifest act from which criminality may be implied. An outward act done in pursuance and manifestation of an intent or design." Black's Law Dictionary 995 (4th ed. 1951).

The overt action in a reckless homicide case involves the method of operating a motor vehicle. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3.) In the present case, the injury which eventually caused the death took place on May 8, 1982, the date of the vehicle collision. To find that the defendant continued with an overt action until death is a judicial holding, broadening the definition of "offense." The legislature has recognized that there are offenses which require extended limitation. (Ill. Rev. Stat. 1985, ch. 38, par. 3—6.) None of the exceptions apply to the facts in this case. Each of the exceptions provides for an alter-

nate limitation which has a determinable time, either no more than three additional years or within one year after a child molested by a parent becomes 18.

If the majority is correct in their treatment of the statute of limitations, then the action could commence within three years of a death, whenever it takes place, if caused by the original accident. In the present cause, the expert testimony indicated that the accident caused the coma and a comatose condition interferes with body defenses against pneumonia. Pneumonia caused the death. This evidently could be true in a pneumonia death of a comatose person 3 years or 15 years after the accident.

Is this court in a position to say that the legislature intended that the State can bring a reckless homicide charge 5, 10, or 15 years after a vehicle collision, being conditioned solely on how long medical science can prolong the life of an injured party? We are not dealing with murder or manslaughter. We are dealing with a crime which in the opinion of the legislature is of a lesser magnitude than those offenses without limitation. If the sword of Damocles is to hang over the defendant's head for an indefinite period of time, let the responsibility rest where it belongs. The extension of a statute of limitation should be based upon public policy, a responsibility of the legislative bodies, not the courts. I would reverse the conviction of the trial court and mandate the dismissal of the reckless homicide charge.